IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| PHILADELPHIA NEWSPAPERS, LLC, ET AL., | : |
| | : BANKRUPTCY NO. 09-11204 (SR) |
| DEBTORS | : (Jointly Administered) |
| ——————————————— | : |
| | : |
| PN CHAPTER 11 ESTATE LIQUIDATING | : |
| TRUST, THROUGH ITS | : |
| LIQUIDATION TRUSTEE, | : |
| | : |
| PLAINTIFF, | : |
| VS. | : |
| | : |
| INSERTS EAST, INCORPORATED, | : |
| | : ADV. NO. 11-00068 |
| DEFENDANT. | : |
| ——————————————— | |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

## Introduction

Before the Court is the Trustee's Motion for Partial Summary Judgment Pursuant to Federal Rule of Bankruptcy Procedure 7056 (the "Motion"). In the Motion, PN Chapter 11 Estate Liquidating Trust, through its Liquidation Trustee ("Trustee"), seeks summary judgment against defendant, Inserts East, Incorporated ("Defendant"), with respect to the following Counts of the Trustee's Amended Complaint: Count I for the avoidance of preferential transfers pursuant to 11 U.S.C. § 547; Count IV for the recovery of avoided transfers pursuant to 11 U.S.C. § 550; and Count V for the

disallowance of claims pursuant to 11 U.S.C. § 502(d) and (j).[1]   While the original

amount at issue in the Amended Complaint was $118,163.81, *see Amended Complaint*

*¶ 10*, the amount has been decreased to $65,655.26 as a result of: (i) the Trustee's

concession that six of the transfers at issue were made within the ordinary course of

business between the parties; and (ii) the Trustee's concession that the Defendant

provided subsequent new value to the Debtor in the amount of $30,294.08.

       Upon consideration and for the reasons set forth below, the Trustee shall be

granted summary judgment.  However, based on the Court's conclusion that the

ordinary course of business exception under 11 U.S.C. § 547(c)(2)(A) protects some of

the transfers which the Trustee is seeking to avoid, the amount of the judgment shall be

$37,082.37 rather than the higher amount of $65,655.26 which the Trustee requested.

However, the Trustee shall also be granted prejudgment interest at the federal

judgment interest rate from the date upon which the Trustee filed the Amended

Complaint.

---

[1]   The Trustee's counsel advised the Court at the hearing on the Motion that the
Trustee will not be proceeding on Counts II and III of the Amended Complaint.
Transcript, dated 1/19/12, at 5.  Accordingly, these counts shall be dismissed from this
adversary proceeding with prejudice.

## Background

On February 22, 2009, Philadelphia Newspapers, LLC and its related

debtor-entities (the "Debtors")[2] filed for relief under Chapter 11 of the Bankruptcy

Code.[3] The Debtors owned and operated numerous print and online publications in the

Philadelphia area, including Philadelphia's two major newspapers (*i.e.*, the Philadelphia

Inquirer and the Philadelphia Daily News) and Philly.com.  Pursuant to the terms of the

Debtors' Fifth Amended Joint Chapter 11 Plan, which the Court approved by Order,

dated September 30, 2010, the Trustee is authorized to prosecute this adversary

proceeding.  *See Bankruptcy Case No. 09-11204, Docket Entry No. 2620.*

The adversary proceeding was commenced on February 18, 2011, by the filing

of a complaint. *Docket Entry No. 1.*[4]  On February 24, 2011, the Trustee filed the

Amended Complaint, *Docket Entry No. 3,* which the Defendant answer shortly

---

[2] The Debtors consist of PMH Acquisition, LLC; Broad Street Video, LLC; Philadelphia Newspapers, LLC, Philadelphia Direct, LLC; Philly Online, LLC.; Broad Street Publishing, LLC; Philadelphia Media, LLC; and Philadelphia Media Holdings, LLC ("PMH").

On February 24, 2009, the Debtors' bankruptcy cases were consolidated for procedural purposes and thereafter jointly administered.  See Bankruptcy Case No. 11204, Docket Entry No. 42 (Order Directing Joint Administration of the Debtors' Related Chapter 11 Cases).

[3] The exception to this statement is that PMH, which is the parent company of all of the rest of the Debtors, commenced its bankruptcy case on June 10, 2009. According to the Trustee, none of the transfers at issue in this adversary proceeding "related to PMH."  Trustee's Memorandum of Law in Support of the Motion ("Trustee's Brief") at 2 n.1.

[4] Unless a docket entry number is preceded by reference to the Debtors' main bankruptcy case, the docket entry number refers to the docket relating to this adversary proceeding.

thereafter, *Docket Entry No. 15.*  Pursuant to a Stipulation and Consent Order, the

discovery deadline in this proceeding was November 4, 2011, which means that the

discovery period was over before the Trustee filed its Motion on December 19, 2011.

*See Docket Entry Nos. 22 & 36.*

Since the Debtors filed for bankruptcy on February 22, 2009, the ninety day

period prior to the Debtors' bankruptcy filings began on November 24, 2008.  Therefore,

the preference period, which is relevant to the Trustee's claims, is November 24, 2008

to February 22, 2009 (the "Preference Period").

Philadelphia Newspapers, LLC (the "Debtor") and the Defendant have had a

business relationship dating back to at least February of 2003.  *See Exhibit E, F and G*

*to the Trustee's Brief and Exhibit B to the Memorandum of Law in Support of*

*Defendant's Response to Trustee's Motion ("Defendant's Brief").*  The payment history

compiled by the Defendant contains payment information for 93 invoices which the

Defendant issued and for which it was paid prior to the preference period (the

"Historical Period").  *See Exhibit G (chart compiled by Trustee using payment history*

*from Defendant) to Trustee's Brief and Exhibit B to Defendant's Brief.*   During the

Historical Period, the Debtor paid the Defendant from 7 to 112 days after the date of the

invoice. *Id.*   The following chart (the "Frequency Chart"), which the Court compiled

based on the payments made during the Historical Period, shows the amount of times

an invoice was paid within the listed amount of days after the date of the invoice:

4

FREQUENCY CHART FOR HISTORICAL PERIOD

| Days after invoice | Frequency of times | Days after invoice | Frequency of times | Days after invoice | Frequency of times |
|---|---|---|---|---|---|
| 7 | 1 | 18 | 1 | 20 | 1 |
| 22 | 1 | 24 | 2 | 25 | 1 |
| 27 | 2 | 28 | 1 | 29 | 1 |
| 31 | 2 | 32 | 3 | 33 | 1 |
| 34 | 6 | 35 | 4 | 36 | 3 |
| 39 | 2 | 41 | 2 | 42 | 4 |
| 44 | 1 | 45 | 5 | 47 | 1 |
| 48 | 1 | 49 | 5 | 50 | 1 |
| 53 | 1 | 54 | 3 | 55 | 3 |
| 57 | 1 | 58 | 1 | 60 | 2 |
| 61 | 3 | 62 | 7 | 63 | 3 |
| 64 | 1 | 67 | 1 | 69 | 2 |
| 70 | 3 | 74 | 1 | 76 | 1 |
| 77 | 1 | 78 | 1 | 81 | 1 |
| 82 | 1 | 86 | 1 | 87 | 1 |
| 96 | 1 | 112 | 1 | | |

Of significance to this matter, the Frequency Chart shows the following: (i) a total of 21 invoices were paid between 30 to 40 days of the invoice date; and (ii) a total of 20 invoices were paid between 60 to 70 days of the invoice date.  The relevance of these facts shall become apparent when the Defendant's arguments are addressed below.

During the Preference Period, the Debtor made payments which covered the amounts owed on 17 invoices issued by the Defendant.  *See Exhibit I to the Trustee's Motion.*  During this period, the Debtor paid the Defendant between 8 and 78 days from the date of the invoice.  *Id.*  The following chart (the "Preference Period Chart") shows

the invoice number, invoice date, payment date, number of days between the invoice

date and payment date, and the amount of the invoice.  In the first column, the chart

lists a number for each payment transaction.  The Court will use these numbers to refer

to the Preference Period payments in this opinion.

## PREFERENCE PERIOD CHART

| No. | Invoice No. | INVOICE DATE | PAYMENT DATE | DAYS AFTER INVOICE | AMOUNT OF INVOICE |
|---|---|---|---|---|---|
| 1 | 20558 | 10/16/08 | 12/05/08 | 50 | $3,077.50 |
| 2 | 20616 | 10/24/08 | 12/22/08 | 62 | $3,320.52 |
| 3 | 20615 | 10/25/08 | 01/02/08 | 69 | $10,037.10 |
| 4 | 20707 | 11/05/08 | 01/08/09 | 64 | $2,655.14 |
| 5 | 20753 | 11/05/08 | 01/22/09 | 78 | $4,980.00 |
| 6 | 20763 | 11/12/08 | 01/22/09 | 71 | $2,640.50 |
| 7 | 20752 | 11/11/08 | 01/12/09 | 62 | $1,595.00 |
| 8 | 20827 | 11/20/08 | 01/12/09 | 53 | $6,120.50 |
| 9 | 20753 | 11/20/08 | 01/16/09 | 57 | $4,980.00 |
| 10 | 20883 | 12/02/08 | 02/02/09 | 62 | $2,655.14 |
| 11 | 20896 | 12/04/08 | 02/02/09 | 60 | $2,935.00 |
| 12 | 20897 | 12/04/08 | 02/02/09 | 60 | $695.00 |
| 13 | 20988 | 12/19/08 | 02/09/11 | 52 | $4,405.83 |
| 14 | 21086 | 01/14/09 | 01/22/09 | 8 | $58,672.00 |
| 15 | 21082 | 01/14/09 | 02/18/09 | 35 | $8,310.00 |
| 16 | 21227 | 02/04/09 | 02/20/09 | 16 | $461.70 |
| 17 | 21254 | 02/06/09 | 02/20/09 | 14 | $622.88 |

6

As mentioned above, the Trustee concedes that six payments made during the

Preference Period were "made within the ordinary course of business between the

parties, and does not seek summary judgment with respect thereto." *Trustee's Brief at

21*. These six payments are Payment Nos. 1, 8, 9, 11, 12 and 13. *See Exhibit I to the

Trustee's Brief & Trustee's Brief at 21.*[5] The Trustee's concession that these six

payments were made within the ordinary course of business between the parties is

based on the fact that these six payments were made within the range of <u>40 to 60</u> days

of the date of the respective invoice. In its brief, the Trustee explains its rationale for

using this range:

> [T]he payment history reflects that historically, the Defendant
> issued an invoice to the Defendant and demanded payment
> within 30-days thereof, and that the Debtor, on average,
> made payment to the Defendant approximately 50-days
> after the issuance of the invoice. Accordingly, the Trustee
> asserts that payments made approximately 50-days from the
> issuance of the invoice could be considered to have been
> made within the ordinary course of business between the
> parties. In the interest of fairness, the Trustee asserts that a
> reasonable "range" for purposes of establishing parameters
> for what payments were made within the ordinary course of
> business would be payments made between 40 and 60 days
> after the issuance of the invoice. This range provides a ten
> day cushion on both sides of the historical average – which
> is appropriate in this case.

*Trustee's Brief at 21.*

As for the rest of the Preference Period payments (Payment Nos. 2-7, 10, 14-

---

[5] As noted on Exhibit I to the Trustee's Brief, the table listed thereon contains
one payment by the Debtor that was not included in the payment history provided by
the Defendant. This payment is No. 9 on the Preference Period Chart.

17), the Trustee asserts that they constitute avoidable preferences under 11 U.S.C.

§ 547(b) because the payments were made outside of the 40 to 60 day range.

However, the Trustee concedes that the Defendant provided goods or performed

services to or for the Debtor during the Preference Period for which the Defendant was

not paid, thereby providing "new value" to the Debtor  The Trustee agrees that the  new

value" totals $30,294.08.[6]  After deducting this amount for "new value" from the total

amount of the Preference Period payments which the Trustee contends are avoidable

preferences, the Trustee asserts that Defendant should be held liable for $65,655.27

under § 547(b).

    In response to the Trustee's motion, the Defendant submitted an affidavit by

Andy Kavulich who is the Chief Financial Officer of the Defendant.[7]  According to

Kavulich, the "[h]istory between the parties, dating back to 2003, shows that most

payments made from the Debtor to Inserts East were made within 30 to 70 days from

invoice." *Kavulich's Affidavit ¶ 4(a), Exhibit D to Defendant's Brief.*  Based on this

---

[6] Both parties agree that the Trustee acknowledged 100% of the Defendant's asserted new value defense.  See Trustee's Brief at 6; Defendant's Brief at 2. Consequently, the new value defense contained in §547(c)(4) is not at issue.

[7] One of the interrogatories which the Trustee served upon the Defendant asked it to "identify any and all persons having knowledge of the facts relevant or material to the allegations of the Complaint and/or Answer and affirmative defenses[.]" See Interrogatory No. 1 in Plaintiff's First Combined Set of Requests for Production of Documents, Interrogatories, and Requests for Admissions to the Defendant, Exhibit C to Trustee's Brief.  In response to this request, the Defendant identified Andrew Kavulich as the person who "is knowledgeable as to invoices and payments[.]" See Defendant, Inserts East, Incorporated's Objections and Answers to Plaintiff's First Interrogatories, Exhibit D to Trustee's Brief.

declaration and the parties' transactional history, the Defendant argues that Preference Period payments made within 30 to 70 days of invoice are not avoidable by the Trustee pursuant to the ordinary course of business exception in § 547(c)(2)(A).  In his affidavit, Kavulich also points out that the "[h]istory between the parties establishes that payments were made on account of multiple invoices" and that "this was common practice between the parties."  *Id. at ¶ 4(b)*.   According to Kavulich, this common practice was used with regard to: (i) Payment Nos. 7 and 8 which were made by one lump payment; (ii) Payment Nos. 5, 6 and 14 which were made by one lump payment; (iii) Payment Nos. 10 and 11 which were made by one lump payment; and (iv) Payment Nos. 16 and 17 which were made by one lump payment.  *Id.*  Based on the Debtor's "common practice" of paying multiple invoices by one lump sum, the Defendant argues that Payment Nos. 5, 6, 14, 16 and 17 (which were made within 78, 71, 8, 16, and 14 days of invoice, respectively) were made "according to ordinary business terms"[8] and, therefore, are not avoidable by the Trustee.  *Defendant's Brief at 4-5.*

Furthermore, Kavulich explains that Payment No. 14, for $58,672.00, was for "paper" for a "job that Inserts East printed in February of 2009."  *Kavulich's Affidavit ¶ 4(c), Exhibit D to Defendant's Brief.*   The invoice which Defendant issued for this amount ($58,672.00), namely Invoice #21086, dated 1/14/2009, states that payment was "Due on receipt."  *Exhibit C to Defendant's Brief.*   Nevertheless, Kavulich avers that "the terms of this invoice, due to the size of the job, was a prepayment[.]" *Kavulich's Affidavait ¶4(c), Exhibit D to Defendant's Brief.*

---

[8] The phrase "ordinary business terms" is used in § 547(c)(2)(B).  The Court discusses the Defendant's use of this term in footnote 11.

Importantly, Exhibit F to the Trustee's Brief consists of all of the invoices for the transactions between the Defendant and the Debtor for the period beginning March 12, 2008 through February 16, 2009.  *See Exhibit F to Defendant's Brief.*  Out of these 37 invoices, the "terms" of all but 5 of the invoices are listed as "Net 30."  *Id.*  The "terms" on 4 of the remaining 5 invoices are listed as " PREPAY."  *Id.*  These 4 invoices are for the following amounts: $39,736.25; $1,595.00; $2,935.00 and $695.00.  *Id.*  Only 1 of the 37 invoices, namely Invoice #21086, for $58,672.00, which is the invoice pertaining to payment No. 14, has the term listed as "Due on receipt."  *Id.*  The date of Invoice #21086 is the same as the "ship" date on the invoice, namely, 1/14/2009.  The "description" on Invoice #21086 is the following:

> 50# CTD. #3 (SOMERSET GLOSS)
>
> I-MAG - 3/5 EVENT
> Paper to produce - 120,000 copies/48 pg.
> Broadsheet

*Id.*

Significantly, Invoice #20472, dated and having a "ship" date of 10/3/2008, has the following description:

> 50# CTD. #3 (SOMERSET GLOSS)
>
> Paper to produce - 120,000 copies/64 pg.
> Broadsheet

*Id.*  The descriptions on Invoice #21086 and Invoice #20472 are nearly identical except that the quantity of pages per copy on Invoice #20472 is substantially <u>higher</u> than the quantity of pages per copy on Invoice #21086 which, also, accounts for the reason that the amount of Invoice #20472 is over $20,000 <u>more</u> than the amount due on Invoice

#21086; yet, the "terms" of Invoice #20472 are "Net 30."  *Id.*  In contrast, the "terms" of

Invoice #21086, which was issued during the Preference Period, are "Due on receipt."

Further, Invoice #20472, which was issued during the Historical Period, was paid 20

days after its invoice date, whereas Invoice #21086 was paid within 8 days after its

invoice date.

Indeed, only 1 invoice that was issued during the Historical Period in an amount

over $30,000, was paid in less than 10 days from the date of invoice.  The other

invoices for over $30,000 were paid in 20, 24, 28, 32, 45, 49, 54, 55 and 78 days from

the date of invoice.

## Discussion

### I.  Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be

granted if, drawing all inferences in favor of the nonmoving party, "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).[9]  A

motion for summary judgment will not be defeated by the mere existence of some

disputed facts, but may be defeated when there is a genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  In determining whether

a genuine issue of material fact exists, the court's function is not to weigh the evidence

or to determine the truth of the matter, but only to determine whether the evidence of

---

[9]  Rule 56 of the Federal Rules of Civil Procedure is applicable hereto pursuant to
Rule 7056 of the Federal Rules of Bankruptcy Procedure.

11

record is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 248–49.  *See also Shubert v. Mull (In re Frey Mechanical Group, Inc.)*, 446 B.R. 208, 213 (Bankr. E.D. Pa. 2011) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,' there is no genuine issue of fact for trial and summary judgment is appropriate.")

When a non-moving party relies upon an affidavit in opposing summary judgment, the affidavit is not sufficient to defeat summary judgment when it fails to aver "specific facts which are admissible at trial" and relies solely upon "conclusory statements, hearsay statements, or unfounded declarations."  *Regan v. Estate Queste Verde,* 2006 WL 3613280, at *5 (D. V.I. Nov. 22, 2006).  Moreover, averments in an affidavit that are contradicted by documentary evidence are insufficient to create a genuine issue of material fact.  *Murray v. IBEW Local Union No. 98 Pension Plan,* 2011 WL 1883168, at *4 (E.D. Pa. May 17, 2011).

In addition, the entry of summary judgment is appropriate if, upon motion and after adequate time for discovery, the party against whom the motion for summary judgment is filed fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  As the Supreme Court stated in *Celotex Corp.*:

> In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving

> party is "entitled to a judgment as a matter of law" because
> the nonmoving party has failed to make a sufficient showing
> on an essential element of her case with respect to which
> she has the burden of proof.

*Id.* at 322-23.  *See also Nathan and Miriam Barnert Memorial Hospital Association v.*

*Onward Healthcare, Inc. (In re Nathan and Miriam Barnert Memorial Hospital*

*Association),* 2009 WL 3230789, at *4 (Bankr. D.N.J. Oct. 5, 2009) (applying summary

judgment standard to matter involving preferential transfers).

## II.  Preferential Transfers

Section 547(b) of the Bankruptcy Code authorizes a trustee in bankruptcy to

avoid certain payments made within ninety days before the debtor files for bankruptcy

as "preferential transfers."  This section states, in pertinent part:

> [A] trustee may avoid any transfer of an interest of the debtor in property--
>
> > (1) to or for the benefit of a creditor;
> >
> > (2) for or on account of an antecedent debt
> > owed by the debtor before such transfer was
> > made;
> >
> > (3) made while the debtor was insolvent;
> >
> > (4) made--
> >
> > > (A) on or within 90 days before the date
> > > of the filing of the petition;
> >
> > > * * *
> >
> > (5) that enables such creditor to receive more
> > than such creditor would receive if--
> >
> > > (A) the case were a case under chapter
> > > 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).   The purpose of this provision is "to ensure that creditors are treated equitably, both by deterring the failing debtor from treating preferentially its most obstreperous or demanding creditors in an effort to stave off a hard ride into bankruptcy, and by discouraging the creditors from racing to dismember the debtor." *Fiber Lite Corporation v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.),* 18 F.3d 217, 219 (3d Cir. 1994).

However, there are certain transfers which a Trustee may not avoid despite the fact that they fit within the scope of § 547(b).  These exceptions are set forth in § 547(c) & (i).  *See 11 U.S.C. § 547(b)* ("Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property . . .). The Defendant raises two of the exceptions here; they are the ordinary course of business defense in § 547(c)(2) and the contemporaneous exchange for new value defense in § 547(c)(1).

The trustee "has the burden of proving the avoidability of a transfer" under § 547(b).  *11 U.S.C. § 547(g).*  However, the party against whom recovery is sought has the burden of proving that a transfer is not avoidable under § 547(b) based on one of the exceptions set forth in § 547(c).  *Id.*

In its motion, the Trustee asserts that it is entitled to summary judgment because there is no genuine issue as to any material fact that all of the elements for preferential

transfers under § 547(b) are met as to Payment Nos. 2-7, 10 and 14-17.  The

Defendant does not dispute this assertion except as to Payment No. 14 for $58,672.00.

As to this payment, the Defendant contends that the Trustee cannot satisfy its burden

of showing that this payment was made on account of an "antecedent debt."  11 U.S.C.

§ 547(b)(3).

    The Defendant also opposes the Trustee's motion on the ground that Payment

Nos. 2, 3, 4, 7, 10 and 15 are unavoidable transfers based on the ordinary course of

business defense set forth in §547(c)(2) because the history between the parties shows

that most payments were made within 30 to 70 days from the date of invoice.  *See*

*Defendant's Brief at 4*.   Eliminating those transfers from the discussion, the Defendant

then argues that the ordinary course of business defense applies to the remaining

payments at issue, namely Payment Nos. 5, 6, 14, 16 and 17, because the history

between the parties shows that it was common practice for the Debtor to make one

lump payment on account of multiple invoices which resulted in the "invoice-to-payment

range on the final invoice" being "much less." *See Defendant's Brief at 4-5.*   The

Defendant further argues that Payment No. 14, for $58,672.00, which was "[d]ue on

receipt," is also covered by the ordinary business defense, because "[t]he terms of the

invoice, due to the size of the job, was a prepayment" and that "[s]uch an arrangement

between the parties for a job of this size is [ ] consistent with the ordinary business

terms between the parties." *See Defendant's Brief at 5.*  Lastly, the Defendant asserts

that, even if the Court concludes that Payment No. 14, for $58,672.00, was not made in

the ordinary course of business, the transfer cannot be avoided because it falls within

the contemporaneous exchange for new value defense under 547(c)(1). *See*

*Defendant's Brief at 5-6.*  Each of these arguments is addressed below.

**Whether the Debtor's payment of $58,672.00 was
made for or on account of an antecedent debt?**

The Bankruptcy Code does not define the term "antecedent debt."  However, it defines "debt" as "liability on a claim."  11 U.S.C. § 101(12).  In *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 36 (Bankr. D. Del. 2011), the bankruptcy court observed that a "debt is antecedent if it was incurred prior to the allegedly preferential transfer." Similarly, the bankruptcy court in *Maxwell v. Penn Media (In re Marchfirst, Inc.),* 2010 WL 4027723, at *7 (Bankr. N.D. Ill. Oct. 14, 2010), opined that "a debt is incurred when the debtor becomes legally obligated to pay."

Invoice # 21086 lists the "terms" of the invoice as "Due on receipt."  According to the invoice and to Kavulich's Affidavit, the invoice was for "paper" which the Defendant used to print a job in February of 2009.  *See Exhibit F to Trustee's Brief & Kavulich Affidavit ¶ 4(c).*  Based on the terms of Invoice #21086, the Debtor was obligated to make payment for the paper upon its receipt of the invoice.  While Kavulich avers that the "terms of this invoice, due to the size of the job, was a prepayment," *see Kavulich Affidavit ¶ 4(c),* the terms set forth on Invoice #21086, which is Defendant's own document, directly refute this characterization.  The invoice states that payment was "Due on receipt"; it does not state that it was a "prepayment."  Moreover, there are 4 invoices in Exhibit F to the Trustee's Motion, namely Invoices #20642, #20752, #20896 and #20897, which list the terms thereon, in <u>capital</u> letters, as "PREPAY."  In other words, the Defendant <u>did</u> issue invoices which required prepayments and when it did so, the terms on the invoices were stated, in capital letters, as "PREPAY."  These 4

16

invoices, with the terms "PREPAY," stand in stark contrast to the terms on Invoice

#21086 which are "Due on receipt."  Moreover, the amounts due on the aforementioned

four invoices were $39,736.25, $1,595.00, $2,935.00 and $695.00.  Three out of four of

these amounts are for less than $3,000, which is inconsistent with Kavulich's averment

that the Defendant required prepayment on Invoice #21086 due to the "size of the job."

*Defendant's Brief at 5*.  Furthermore, the terms of a job of a similar size,[10] which is listed

on Invoice #20472, were "Net 30" and not "[D]ue on receipt" which further refutes the

Defendant's contention that a "prepayment" arrangement for a job of "this size" was

consistent with the ordinary business terms of the parties."  *Id.*  Thus, the conclusory

statements which Kavulich made in his affidavit in an effort to defeat the Trustee's

Motion are irreconcilable with the parties' transactional history and the Defendants'

invoices.  Since the statements in the affidavit have no foundation in fact, no

reasonable trier of fact could conclude, based on the statements, that the Debtor's

payment of $58,672.00, as billed on Invoice #21086, was a "prepayment" rather than a

payment on account of an antecedent debt.  11 U.S.C. § 547(b)(2).

---

[10] As the Court noted in the "Background" section above, the quantity of paper
listed on Invoice #20472, dated 10/3/08, is significantly higher than the quantity of
paper listed on Invoice #21086 (120,000 copies of 64 pages compared to 120,000
copies of 48 pages) and the amount due on Invoice #20472 is also more than $20,000
higher than the amount listed on Invoice #21086.

***Whether the ordinary course of business defense
applies to Payment Nos. 2-7, 10 and 14-17?***

As noted above, one exception to the Trustee's authority to avoid a transfer

under § 547(b) is set forth in § 547(c)(2).[11]  This exception, which is commonly referred

to as the ordinary course of business exception, is meant to "induce creditors to

continue dealing with a distressed debtor so as to kindle its chances of survival without

a costly detour through, or a humbling ending in, the sticky web of bankruptcy."  *In re*

*Molded Acoustical Products, Inc.,* 18 F.3d at 219.

---

[11] Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer--

(2) to the extent that such transfer was in payment of
a debt incurred by the debtor in the ordinary course of
business or financial affairs of the debtor and the transferee,
and such transfer was--

(A) made in the ordinary course of business or
financial affairs of the debtor and the
transferee; or

(B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).  With regard to prong (B), the phrase "ordinary business terms"
means "the range of terms that encompasses the practices in which firms similar in
some general way to the creditor in question engage[.]" Fiber Lite Corporation v.
Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.), 18 F.3d 217,
224 (3d Cir. 1994) (emphasis in original) (quoting In re Tolona Pizza Prods. Corp., 3
F.3d 1029, 1033 (7th Cir.1993)).  In its brief, the Defendant uses the phrase "ordinary
business terms" in conjunction with its argument regarding invoices paid in lump sum
payments.  See Defendant's Brief at 5 (argument regarding it being the Debtor's
common practice to pay multiple invoices with one lump sum).  However, the
Defendant failed to submit any evidence whatsoever that the payments at issue were
made according to "ordinary business terms."  Therefore, any argument based on
§ 547(c)(2)(B) obviously lacks merit.  Accordingly, the Court will give the Defendant the
benefit of the doubt and assume that Defendants' arguments are based upon
§ 547(c)(2)(A).

Whether a transfer was made in the ordinary course of business is a subjective inquiry "calling for the Court to consider whether the transfer was ordinary between the debtor and the creditor." *United States Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc.),* 180 F.3d 504, 512 (3d Cir. 1999). An important indicator to determine ordinary course of business is whether the timing of preference period payments was consistent with the timing of payments during the pre-preference period.[12] *Cunningham v. T & R Demolition, Inc. (In re ML & Associates, Inc.)*, 301 B.R. 195, 204 (Bankr. N.D. Texas 2003)). When there is a difference between pre-

---

[12] Other factors that are relevant in determining the ordinary course of business between parties for purposes of §547(c)(2) include the following:

> (1)  the length of time the parties have engaged in the type of dealing at issue;
>
> (2)  whether the subject transfer was in an amount more than usually paid;
>
> (3)  whether the payments were tendered in a manner different from previous payments;
>
> (4)  whether there appears any unusual action by either the debtor or creditor to collect or pay on the debt;
>
> (5)  whether the creditor did anything to gain an advantage (such as gain additional security) in light of the debtor's deteriorating financial condition.

Official Committee of Unsecured Creditors v. Nucor-Yamato Steel Company (In re J. Allan Steel Co.), 336 B.R. 226, 229 (W.D. Pa. 2005) (citing Troisio v. E.B. Eddy Forest Products, Ltd. (In re Global Tissue, L.L.C.), 302 B.R. 808, 812 (D. Del. 2003), aff'd, 106 Fed. Appx. 99 (3d Cir. 2004)). In the instant adversary proceeding, the parties' dispute of whether the preference payments were made within the ordinary course of business hinges on the timing of the payments.

preference and preference period payment times, determining whether that difference
is substantial enough to be considered outside of the ordinary course of business is a
very fact-specific inquiry. *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66,
70 (3d Cir. 1989) (reasoning that "[w]hether or not a debtor made a particular payment
in the ordinary course of business is a factual determination[.]").

      In the instant proceeding, the Trustee conceded that payments made within 40
to 60 days from the date of invoice were made within the ordinary course of business
and, therefore, not avoidable under § 547(b).  The Defendant contends that the 40 to
60 day payment range is too narrow and that payments made by the Debtor within 30 to
70 days from the date of the invoice are within the ordinary course of business of the
parties.  The Court agrees with the Defendant on this issue.

      During the Historical Period, only 31 out of 93 payments, which is only 33% or
1/3 of the payments, were made in the 40 to 60 day range used by the Trustee.  In
contrast, 74 out of 93 of the payments which is equivalent to 80% of the payments,
were made in the 30 to 70 day range.  As the Court noted above, 21 invoices were paid
between 30 to 40 days after the invoice date and 20 invoices were paid between 60 to
70 days after the invoice date.   The 40 to 60 range used by the Trustee would mean
that the 41 payments, made during the Historical Period, were made outside of the

ordinary course of business of the parties.[13]  The Court simply does not agree with that

proposition.  The Debtor's payment history during the Historical Period supports the

Defendant's position that a range of 30 to 70 days from the date of invoice is more

appropriately used for application of the ordinary course of business defense.  *See*

*Rifken v. Entec Distribution, LLC (In re Felt Manufacturing Co., Inc.)*, 2009 WL

3348300, at *7 (Bankr. D. N.H. Oct. 16, 2009) (rejecting payment range which was too

narrow for broader payment range).

Using the 30 to 70 day payment range, the Court concludes that the Defendant

has satisfied its burden of showing that Payment Nos. 2, 3, 4, 7, 10 and 15 are

transfers within the ordinary course of business exception contained in § 547(c)(2)(A).[14]

Therefore, only the following five Preference Period payments are still at issue:

| | |
|---|---|
| Payment No. 5: | $4,980.00 payment made 78 days after invoice |
| Payment No. 6: | $2,640.50 payment made 71 days after invoice |
| Payment No. 14: | $58,672.00 payment made 8 days after invoice |
| Payment No. 16: | $461.60 payment made 16 days after invoice |
| Payment No. 17: | $622.88 payment made 14 days after invoice |

The Defendant asserts that these five remaining payments, totaling $62,834.98, are

---

[13]  Among the invoice and payments outside of the Trustee's 40 to 60 day
payment range are the following:

> (i) six payments that were made within 34 days of invoice;
> (ii) four payments that were made within 35 days of invoice;
> (iii) three payments that were made within 61 days of invoice;
> (iv) seven payments that were made within 62 days of invoice;
> (v) three payments that were made within 63 days of invoice; and
> (vi) three payments that were made within 70 days of invoice.

Using the Trustee's 40 to 60 day range, none of these transfers from the Historical
Period would be within the parties' ordinary course of business.

[14]  The total amount of Payment Nos. 2-4, 7, 10 and 15 is $28,572.90.

within the ordinary course of business exception because the history between the

parties shows that it was common practice for the Debtor to make one lump payment

on account of multiple invoices.  The Court is unpersuaded by this argument.

Accepting the fact that it was common practice for the Debtor to make lump payments

on account of multiple invoices, the Debtor still made its payments on 80% of the

Defendant's invoices during the Historical Period within 30 to 70 days from the date of

invoice.  Therefore, regardless of whether the Debtor paid an invoice during the

Preference Period by a lump sum which also paid other invoices or by an individual

payment on a single invoice, the invoice to payment range of 30 to 70 days still applies.

Since the Court has already determined that Payment Nos. 5, 6, 14, 16 and 17 were

made outside of the 30 to 70 day range, the Defendant has failed to establish, by its

lump payment argument, that its payments on these invoices were made in the ordinary

course of business or financial affairs of the Debtor.

    Moreover, with regard to Payment No. 14, for $58,672.00, which was made

within 8 days of invoice, the Defendant's argument regarding the lump sum payments is

even more untenable.  The two other payments (Payment Nos. 9 and 6), which were

made by the same lump sum as Payment No. 14, were: (i) for much lower amounts,

namely $4,980.00 and $2,640.50, than Payment No. 15; and (ii) made within 57 and 71

days of invoice as compared to 8 days of invoice.  In contrast, all of the other payments

which the Defendant identified its brief as having been paid during the Preference

Period by lump sums were paid within the same general time frames from the date of

the invoice and on consecutively issued invoices.  Payment Nos. 7 and 8 were made

within 62 and 53 days of invoice; Payment Nos. 10 and 11 were made within 62 and 60

days of invoice; and Payment Nos. 16 and 17 were made within 16 and 14 days of

invoice. These facts, based on the Defendant's own documents, undercut its argument

that Payment No. 14 just happened to occur within 8 days of invoice because it was the

Debtor's "common practice" to pay multiple invoices with a lump sum.

Defendant's last argument with regard to the ordinary course of business

defense is that the terms of Invoice #21086 and the Debtor's payment on the invoice

were "consistent with the ordinary business terms between the parties." *Defendant's*

*Brief at 5.* The Defendant bases this argument on Kavulich's representation that the

terms of Invoice #21086 "was a prepayment[]" and that such an arrangement was

"consistent with the ordinary business terms between the parties" for a "job of this size."

*Id.* The Court has already concluded that this representation is directly contradicted by

the Defendant's own documents and the parties' transactional history. The terms

stated on Invoice #21086 are "Due on receipt" and not "PREPAY." Moreover, it is the

only invoice out of thirty-seven invoices in the record with the terms "Due on receipt."

The Defendant has not asserted that it ever sent another invoice to the Debtor stating

that it was "due on receipt." Furthermore, the terms listed on Invoice #20472, which is

for <u>more</u> money ($20,000 more) and a <u>larger</u> quantity of paper than that of Invoice

#21086, are "Net 30." Thus, no reasonable trier of fact could conclude that the terms of

Invoice #21086 and the Debtor's payment on the invoice were "consistent with the

ordinary business terms between the parties."

***Whether the Debtor's payment of $58,672.00***
***fits within the contemporaneous exchange for***
***new value defense of § 547(c)(1)?***

The Defendant's final argument in opposition to the Trustee's Motion is that the

Trustee "cannot satisfy its burden" that Debtor's payment of $58,672.00 on Invoice

#21086 "was not intended by the [D]ebtor and Defendant to be a contemporaneous

exchange for new value given to the [D]ebtor under 11 U.S.C. § 547(c)(1)(A)."

*Defendant's Brief at 5-6*. Importantly, the Defendant's argument is based on the

erroneous proposition that it is the Trustee's burden to establish that the

contemporaneous exchange for new value exception under § 547(c)(1)(A) is

inapplicable. To the contrary, as a matter of law, the Defendant bears the burden of

proving that the exception <u>is</u> applicable.  *See Lichtenstein v. Aspect Computer (In re*

*Computer Personalities Systems, Inc.)*, 320 B.R. 812, 817 (E.D. Pa. 2005)(explaining

that the Trustee has the initial burden of proving that a transfer is preferential, but that

once this burden is met, the burden shifts to the <u>creditor</u> to prove the nonavoidability of

the transfer); *see also § 547(g)*.  Thus, it is the Defendant's burden, in opposing the

Trustee's Motion, to establish that a genuine issue of material fact exists regarding

whether the contemporaneous exchange exception in § 547(c)(1) is applicable to the

Debtor's payment of $58,672.00.  *See Shubert v. Mull (In re Frey Mechanical Group,*

*Inc.)*, 446 B.R. at 214.

24

In order for the contemporaneous exchange exception to be applicable,[15] the

Defendant must show that: (i) it extended new value to the Debtor; (ii) the parties

intended the new value and the Debtor's payment to be contemporaneous exchanges;

and (iii) the exchanges were, in fact, substantially contemporaneous.  *Lichtenstein,* 320

B.R. at 817.  Insofar as the first and third requirements of the contemporaneous

exchange exception, the Court notes that Invoice #21086 bills the Debtor for paper to

produce 120,000 copies of 48 pages each, that the terms of the invoice are "Due on

receipt," and that the Debtor paid the invoice within 8 days of the date of the invoice.

This evidence could potentially be construed to establish that there are genuine issues

of material fact as to whether the Defendant extended new value to the Debtor and

whether the exchange of new value for the Debtor's payment was, in fact, substantially

contemporaneous.  However, it is unnecessary for the Court to reach a conclusion in

this regard because there is no evidence in the record to support the second

requirement of the test.

---

[15]  The contemporaneous exchange for new value exception under § 547(c)(1)
states:

> (c) The trustee may not avoid under this section a transfer--
>
> (1) to the extent that such transfer was--
>
>> (A) intended by the debtor and the
>> creditor to or for whose benefit such transfer
>> was made to be a contemporaneous exchange
>> for new value given to the debtor; and
>>
>> (B) in fact a substantially
>> contemporaneous exchange[.]

11 U.S.C. § 547(c)(1)(A).

In *Creditor's Committee v. Spada (In re Spada)*, 903 F.2d 971 (3rd Cir. 1990), the

Third Circuit observed that "'[t]he critical inquiry in determining whether there has been

a contemporaneous exchange for new value is whether the parties intended such an

exchange.'" *Id. at* 975 (*quoting Matter of Prescott*, 805 F.2d 719, 727 (7th Cir. 1986)).

The Defendant has offered no evidence which supports this requirement of the test.   In

paragraph 4(c) of his Affidavit, Kavulich swears and affirms as follows:

> Upon further review of the circumstances surrounding the
> payment of $58,672.00 made on invoice 21086, I have
> confirmed that the payment was for paper for a job that
> Inserts East had printed in February 2009. The invoice was
> to be paid upon receipt, and Inserts received the wire
> transfer eight days later. **The terms of this invoice, due to
> the size of the job, was a prepayment and was not a
> payment made on account of antecedent debt or that it
> was not intended by the debtor and Defendant to be a
> contemporaneous exchange for new value given to the
> debtor under 11 U.S.C. § 547(c)(1)(A).**

*Kavulich's Affidavit attached to Defendant's Brief (emphasis added)*.   The last sentence

in this paragraph is quite confusing.   As written, it states: "The terms of the invoice, due

to the size of the job, was a prepayment and was not a payment made on account of an

antecedent debt or that it was <u>not</u> intended by the debtor and Defendant to be a

contemporaneous exchange for new value given to the debtor under 11 U.S.C.

§ 547(c)(1)(A)." *Id. (emphasis added)*.   However, perhaps Kavulich meant to say that

the terms of the invoice required a prepayment or that the Debtor and the Defendant

intended for the Debtor's payment on the invoice to be a contemporaneous exchange

for new value.   Nevertheless, even if this is what Kavulich meant to say, his statement

is internally inconsistent.   Either the Defendant intended for Debtor's payment on the

invoice to be a prepayment OR the Defendant intended the payment to be a

contemporaneous exchange for new value, namely the paper for the printing job which

Kavulich says the Defendant did in February of 2009.  The conclusory contention that

Defendant had one or, in the alternative, the other intention is absurd and disingenuous

because the intentions are mutually exclusive.  If the Defendant intended the Debtor's

payment on the invoice to be a prepayment, then it could not have intended for the

payment to be a contemporaneous exchange for new value.  Throwing both possibilities

into the ring in order to try to defeat the Trustee's Motion simply does not work.

Since Kavulich offers two conflicting views in the very same sentence as to the

Defendant's intention with regard to Invoice #21086 and there is no evidence in the

record as to the <u>Debtor's</u> intent with regard to its payment, the Defendant has failed to

"make a showing sufficient to establish the existence of an element essential to" its

case, and on which it "will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,*

477 U.S. at 322.  *See Riley v. National Lumber Company (In re Reale)*, 393 B.R. 821,

828 (1st Cir. BAP 2008) (emphasis in original) (rejecting creditor's argument that

contemporaneous exchange for new value defense applied since there was "no

evidence" that the Debtor and the Defendant "*intended* the purported exchange to be

contemporaneous for new value, an essential element of the defense.").  Therefore, the

Trustee may avoid the $58,672.00 payment which the Debtor made during the

Preference Period.

### III.  Recovery of the Property Avoided Under § 550

Pursuant to 11 U.S.C. § 550(a), the Trustee is authorized to recover from the

Defendant the value of the payments avoided under § 547(b).  Deducting the total value

of the payments, namely Payment Nos. 2-4, 7, 10 and 15 ($28,572.90), which the Court

concluded are not avoidable due to the ordinary course of business defense set forth in

§ 547(c)(2)(A), from the total amount sought by the Trustee ($65,655.27), the Court

concludes that the Trustee is entitled to recover $37,082.37 from the Defendant under

§ 550(a).  The Trustee also seeks an award of prejudgment interest at the applicable

federal rate of interest from the date its counsel filed the Amended Complaint.  *See*

*Trustee's Brief at 32.*  As the Defendant failed to offer any argument in opposition to this

request, the Court shall grant it.  *Investment Co. v. Universal Forest Products, Inc. (In re*

*Hechinger Investment Co.),* 489 F.3d 568, 579-580 (3d Cir. 2007) (holding that

prejudgment interest should be awarded under § 550(a) unless there is a "sound

reason" for denying it).[16]

-----------------------------------

[16]  The Trustee also requests an award of costs as part of its relief.  Bankruptcy Rule 7054 provides, in pertinent part, that a "court may allow costs to the prevailing party . . . ."  Fed. R. Bankr. P. 7054.  Based on the language of this rule, the Court may exercise its discretion in awarding costs.  Springel v. Prosser (In re Innovative Communication Corporation), 2011 WL 3439291, at *48 (Bankr. D. V.I. Aug. 5, 2011).  The Court shall utilize its discretion and deny an award of costs.  The Trustee can recover its costs from estate proceeds.  Id.  (denying award of costs on grounds that trustee "can recoup his costs from estate proceeds.").

### IV.  Temporary Disallowance of Claims Under § 502(d) & (j)

Pursuant to § 502(d) & (j),[17] the Trustee seeks to have any and all claims of the

Defendant disallowed until such time as it pays the Trustee an amount equal to the

aggregate amount due for the avoided transfers, which the Court has concluded is

$37,082.37 plus interest.  *See Amended Complaint, Count V.*  The Defendant has two

claims in the Debtors' bankruptcy case.  It filed a proof of claim for an unsecured debt in

the amount of $22,357.73 for "goods sold" prepetition.  *See Proof of Claim #5, dated*

*3/17/12, of Inserts East, Inc.*  It also has an allowed administrative claim in the amount

of $6,000.00.  *See Amended Order, dated 4/22/10, at Docket Entry No. 1965.*  The

Trustee's request to have these claims disallowed until the Defendant pays $37,082.37

plus interest to the Trustee shall be granted.

---

[17] Section 502(d) & (j) provide, in pertinent part:

> (d) . . . [T]he court shall disallow any claim of any entity
> from which property is recoverable under section 542, 543,
> 550, or 553 of this title or that is a transferee of a transfer
> avoidable under section 522(f), 522(h), 544, 545, 547, 548,
> 549, or 724(a) of this title, unless such entity or transferee
> has paid the amount, or turned over any such property, for
> which such entity or transferee is liable under section 522(i),
> 542, 543, 550, or 553 of this title.

> (j) A claim that has been allowed or disallowed may be
> reconsidered for cause. A reconsidered claim may be allowed
> or disallowed according to the equities of the case.

11 U.S.C. § 502(d) & (j).

**Conclusion**

The Court has concluded that, while Payment Nos. 2-4, 7, 10 and 15 are unavoidable pursuant to the ordinary course of business exception under § 547(c)(2)(A),[18] the Trustee is entitled to avoid Payment Nos. 5, 6, 14, 16 and 17 as preferential transfers under § 547(b).  Therefore, the Trustee is entitled to summary judgment in its favor with respect to Counts I, IV and V of the Amended Complaint.  The Trustee shall be awarded a judgment in the amount of $37,082.37, plus prejudgment interest at the applicable federal rate from the date upon which the Trustee filed the Amended Complaint.  Postjudgment interest shall also accrue at the applicable federal rate.  The Trustee's request for costs shall be denied.  Lastly, Counts II and IV of the Amended Complaint shall be dismissed with prejudice based upon the representation made in open court that the Trustee does not intend to pursue relief under these counts of the Amended Complaint.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: March 22, 2012

---

[18]  As discussed above, the Trustee concedes that Payment Nos. 1, 8-9 and 11-13 are unavoidable under § 547(c)(2)(A).

30